IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**David Ashe,**
Plaintiff

v.                                                Civil No. 10-2236 (DRD)

**Distribuidora Norma, Inc., Carvajal S.A.,**
**Editorial Norma S.A., et al.**
Defendants

## OPINION AND ORDER

David Ashe ("Plaintiff") alleges to have been the victim of age discrimination at the hands of his former employers Carvajal S.A.; Distribuidora Norma, Inc.; and Editorial Norma S.A.  In addition to several remedies under state law, Plaintiff seeks compensation under the Age Discrimination in Employment Act ("ADEA").  *See* 29 U.S.C. §§ 621-634. Plaintiff is particularly alleging an ADEA violation as to a position in which he worked for Editorial Norma S.A.; the other two Defendants are alleged to have acted in conjunction with Editorial Norma S.A. in committing the ADEA infraction.  Pending before the Court is a joint motion for summary judgment filed by all three Defendants.  Defendants aver that summary judgment should be granted because no reasonable jury could rule in Plaintiff's favor because Plaintiff cannot establish either: a) that a *prima facie* case of age discrimination exists, as required under ADEA, and/or b) that age was the *but-for* cause for Plaintiff's firing.  For the reasons set forth below, the Court hereby **DENIES** Defendants' motion for summary judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The facts of the instant case are complicated by the numerous business entities involved and their relationships to one another.  An understanding of said relationships is critical as they are related to the legal issues surrounding the instant motion for summary judgment.  Plaintiff's argument to treat Defendants as one entity under the *single employer doctrine* is particularly dependent on this understanding.  Further, the facts have been stated in the light most favorable to Plaintiff, who is the non-moving party.

To begin, there are three defendants in the instant case: Carvajal S.A. ("Carvajal"), Distribuidora Norma Inc. ("Distribuidora"), and Editorial Norma S.A. ("Editorial").[1] Nevertheless, it is necessary to mention several additional non-party business entities in order to fully comprehend the relationships between Defendants.  Carvajal, a Defendant, is a large international holding company of numerous business entities.  (Docket No. 240, p. 1, ¶ 1).  Among the companies held by Carvajal are: a) Editorial, b) Publicar, and c) BICO. (Docket No. 265, p. 2, ¶ 2; Docket No. 240, p. 4, ¶ 14; and Docket No. 240, p. 9, ¶ 29).  At some point, Editorial merged with BICO to form Grupo Norma.[2]  (Docket No. 265-2, ¶ 25). Before April of 2009, Editorial was itself the holding company of: a) Distribuidora, and b) B2B Portales ("B2B").[3]  (Docket Nos. 240, p. 3, ¶ 8; Docket No. 265-2, ¶ 6).  After April 2009, Publicar became the holding company of B2B.  (Docket No. 241-44).  With the explanation of the business structure briefly narrated, the Court shall proceed to describe Plaintiff's place within said structure over different periods of time.

---

[1] In the record, Editorial Norma S.A. is also known as Grupo Editorial Norma or GEN.  For the sake of consistency, the Court shall only use one name: Editorial. The Court also notes that Grupo Editorial Norma or GEN should not be confused with Grupo Norma which is yet another entity to be discussed.

[2] The Court notes that Grupo Norma is sometimes referred to as "Norma Group."

[3] B2B, before a name change, was known as Edimedios when Plaintiff was originally hired.  For uniformity, the Court will only use the more recent name.  However, B2B should not be confused with B2B Global, which is yet another company to be mentioned.

Plaintiff was hired on May 1, 1990 as the international sales manager for B2B. (Docket No. 265, p. 39, ¶ 2).   Subsequently, Plaintiff was promoted to the position of general manager of B2B.  Id. at p.39, ¶ 3.  In 2005, Plaintiff was named country manager of Distribuidora.  (Docket No. 240, p. 3, ¶ 11).  However, to be clear, Plaintiff's appointment as country manager did not mean that Plaintiff would be relinquishing his prior position as general manager of B2B.  On the contrary, Plaintiff simultaneously held both positions: a) general manager for B2B Portales, and b) country manager for Distribuidora.  (Docket No. 265-3).   In May of 2008, the parameters of Plaintiff's position as country manager of Distribuidora changed.   From that point forward, as country manager of Distribuidora, Plaintiff was assigned to manage B2B Global and Editorial/Grupo Norma.  (Docket No. 265-6).[4]  Shortly after Publicar became the holding company for B2B, Plaintiff's country manager position was eliminated.  (Docket No. 241-44).   However, Plaintiff continued to manage Editorial/Grupo Norma, which was one of the duties assigned to him as country manager of Distribuidora before said position was eliminated.  (Docket No. 265-2, ¶ 24). Further, Plaintiff also continued to manage B2B.  (Docket No. 241-44).  Thus, at that time Plaintiff worked simultaneously in management positions for: a) B2B, and b) Editorial/Grupo Norma (the position subject to an alleged ADEA infringement).  See Id.; Docket No. 278, p. 35, ¶ 19; and Docket No. 265-2, ¶ 24.  In January of 2010, in a company move that Plaintiff admits is independent of any age discrimination, Plaintiff was relieved of his management position for B2B in favor of Mr. Cody Lund.[5]  (Docket No. 240-102; Docket No. 265, p. 10, ¶ 32, and Docket No. 278, p. 36, ¶ 25).  Consequently, Plaintiff

---

[4] The docket citation says "GEN" which is Editorial which later merged with BICO to form Grupo Norma.  See Footnote 1 of this opinion and order.  Also, due to the fact that Plaintiff managed both Editorial and, after the merger, Grupo Norma, the Court usually refers to both of these together: Editorial/Grupo Norma.
[5] The Court notes that in some parts of the record Mr. Cody Lund is also referred to as Mr. Macody Lund and Mr. Robert Macody Lund.  For the sake of clarity, the Court shall only use: Mr. Cody Lund.

was only left with the management position for Editorial/Grupo Norma. (Docket No. 265, p. 41, ¶ 26). Finally, Plaintiff's employment was terminated on June 30, 2010. (Docket No. 242-16).[6]

Plaintiff was 44 years of age at the time of the firing. Plaintiff avers that Mr. Juan David Calero ("Mr. Calero"), who is 34 years of age, replaced him as the manager for Grupo Norma. Defendants deny that Plaintiff was in fact "replaced." (Docket No. 239, p. 13). On September 20, 2010, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") in which he invokes his rights under ADEA. (Docket No. 1, Exhibit 1A). Thereafter, on November 5, 2010, the EEOC issued a "Notice of Right to Sue." (Docket No. 1, Exhibit 1B). Thus, Plaintiff then proceeded to file, in a timely manner, the instant lawsuit on December 16, 2010. The instant lawsuit is based, *inter alia*, on the theory that Defendants violated ADEA by: a) discriminating against Plaintiff on account of his age, and b) firing Plaintiff on account of his age. (Docket No. 31, p.4, ¶ 26-27). Defendants deny that said firing was age related; on the contrary, Defendants state that the reasons for the firing are completely independent of Plaintiff's age.

After extensive discovery, Defendants jointly filed a motion for summary judgment on October 10, 2013. (Docket Nos. 239, and 240). Defendants' motion argues that a summary judgment is warranted because: a) Plaintiff cannot establish a *prima facie* case of age discrimination as required under ADEA, and/or b) Plaintiff cannot establish that he would not have been fired *but for* his age. On November 14, 2013, Plaintiff filed the

---

[6] There is no controversy as to the fact that Plaintiff was terminated on said date from whatever remaining position(s) Plaintiff still had within the Carvajal structure. (Docket No. 240, p. 18, ¶ 65; Docket No. 265, p. 20, ¶ 65). However, it should also be noted that the cited termination letter, see Docket No. 242-16, mistakenly states that Plaintiff was being terminated from his position as country manager. The record, including exhibits provided by Defendants, would indicate that said position had been eliminated a year earlier and that Plaintiff was then working in a management position for Editorial/Grupo Norma. Even if this disputed fact was not a mistake, the Court must consider the record in the light most favorable to Plaintiff. Hence, for the sake of summary judgment, it must find this fact in Plaintiff's favor.

corresponding opposition in which he disputes both arguments raised by Defendants. (Docket No. 270).   After a thorough analysis of the extensive record, the Court shall proceed to scrutinize the motion and its merits.

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).   "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party."   *See* Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citing Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (stating that an issue is "genuine" if it can be resolved in favor of either party).   The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial.   "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Liberty Lobby, Inc., 477 U.S. at 255.   (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure).   In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000) (citing Liberty Lobby, Inc., 477 U.S. at 247–248); *and*

Prescott, 538 F.3d at 40 (1st Cir. 2008) (citing Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Fed.R.Civ.P. 56(e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. Shalala, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); see also Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Liberty Lobby, Inc., 477 U.S. at 247–248. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). The Court must review the record as a whole and refrain from engaging in the assessment of any credibility or determine the weight of the evidence presented. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves, 530 U.S. at 150 (quoting Anderson, 477 U.S. at 250–51).

Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. See Poller v. Columbia Broad. Sys., 368 U.S. 464, 473 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles."); see also Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982) ("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); Dominguez–Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000) (finding that "determinations of motive and intent . . . . are questions better suited for the jury").

## III.    AGE DISCRIMINATION IN EMPLOYMENT ACT

The ADEA makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. § 623(a)(1).   ADEA prohibits age discrimination in public and private employment against individuals who are at least 40 years of age.   29 USC §§ 621-634. ADEA violations may be established by proving either disparate treatment or disparate impact.   Smith v. City of Jackson, Miss., 544 U.S. 228 (2005).   Plaintiffs often allege claims under both theories.   See Pottenger v. Potlatch Corp., 329 F. 3d 740, 749 (9th Cir. 2003) and Byrnie v. Town of Cromwell Bd. Of Educ., 243 F.3d 93 (2d Cir. 2001).   Disparate treatment claims under ADEA may be based on direct or circumstantial evidence, as set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).

In ADEA cases, when there is no direct evidence as to age discrimination, the Court employs the familiar *McDonnell Douglas* burden-shifting framework to evaluate the employee's evidence.[7]   Id.; Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012).   *McDonnell Douglas* and its progeny describe and distinguish two different types of burdens that are carried by the parties of a discrimination lawsuit: a) the *ultimate burden*, and b) the *intermediate burdens*.   In a case of age discrimination under ADEA, the *ultimate burden* of persuasion is always carried by the employee; it never shifts between parties. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n. 2 (1978)).   However, *intermediate burdens* do shift between the parties in accordance with the *McDonnell Douglas* methodology.   Burdine, 450 U.S. at 253.   "The *McDonnell Douglas* division of

---

[7] The Supreme Court has not definitively decided that the *McDonnell Douglas* burden shifting framework of Title VII applies to ADEA cases; however, the First Circuit, along with other circuit courts, has established that *McDonnell Douglas* does in fact apply to ADEA cases.   Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447, n.2 (1st Cir. 2009) (citing Gross, 557 U.S. at 175 n.2).

intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question."  (Emphasis in original)  Id.

The *ultimate burden* in age discrimination cases under ADEA is proving "that age was the 'but-for' cause of the employer's adverse decision."  Gross v. FBL Fin. Servs., 557 U.S. 167 (2009) (interpreted the phrase "because of such individual's age" in 29 U.S.C. § 623(a)(1) as meaning that an individual would not have been fired *but for* his or her age); *see also* Torrech-Hernandez v. GE, 519 F.3d 41, 48 (1st Cir. 2008).  Slightly restated, the ADEA statute requires proof that age was *the motivating factor*, as opposed to *a motivating factor*, of an employer's decision to terminate an employee.[8]

When no direct evidence of age discrimination is provided, as is usually the situation, the aforementioned *intermediate burdens* come into play.  The initial *intermediate burden* under ADEA is shouldered by the employee.[9]  The employee must establish, by a preponderance of the evidence standard, a *prima facie* case of age discrimination using admissible evidence.  Burdine, 450 U.S. at 253 (citing *McDonnell Douglas).*  Under *McDonnell Douglas*, in the context of the replacement of an employee, a *prima facie* case of age discrimination may be established by demonstrating that: 1) the employee was at least 40 years old at the time of the firing; 2) the employee was qualified for the position that he had held; (3) the employee was fired; and (4) the employer subsequently demonstrated a continuing need for those services.  *See* Bonefont-Igaravidez v. International Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011) (citing Vélez v. Thermo

---

[8] While the *but-for* test is now applicable to any mixed motive or disparate treatment action under ADEA, many other employment discrimination statutes require that an individual demonstrate that an impermissible discriminatory motive was only "a motivating factor" in the adverse employment action as opposed to being "the motivating factor."  *See* Gross, 557 U.S. at 173-78 (part II of the opinion discusses the differences between both standards); *see also* 42 U.S.C. § 2000e-2(m) ("a motivating factor" is obviously different from "the motivating factor").

[9] Notwithstanding the burden shifting methodology set forth in *McDonnell Douglas*, the ultimate burden of persuasion always falls on the employee throughout the case.  Burdine, 450 U.S. at 253.

King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009)); *see also,* Pages-Cahue v. Iberia Lineas Aereas de Espana, 82 F.3d 533, 536 (1st Cir. 1996).  A plaintiff may satisfy the fourth requisite by establishing that the defendant hired a replacement employee who is younger than a plaintiff who is over 40 years of age.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996).  But in doing so, it is important to note that ADEA does not require that the replacement employee be less than 40 years of age.  Id. Thus, ADEA may be invoked even when the replacement employee is also a member of the protected class.  Id.  "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  Id. at 313.  With respect to determining if an employee was in fact "replaced," the First Circuit has stated:

> [a discharged employee] 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.' Rather, 'a person is replaced **only** when another employee is hired or reassigned to perform the plaintiff's duties.'  (emphasis added).
>
> LeBlanc v. Great American Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993) (quoting Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir.1990), cert. denied, 498 U.S. 878 (1990)).

In the context of a reduction in force, the fourth requirement is changed to: 4) his or her employer either did not treat age neutrally or retained younger employees in the same position.  Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563, 571 (1st Cir. 2012). (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir.1995)).  If the employee succeeds in establishing a *prima facie* case, a rebuttable presumption of discrimination is established.  Burdine, 450 U.S. at 254.

Once a plaintiff establishes a *prima facie* case, a burden of production is placed on the defendant's shoulders to show that the reason(s) for the adverse employment action were independent of the plaintiff's age. Id. "It is important to note, however, that although the McDonnell Douglas presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (citing Burdine, 450 U.S., at 253). If the employer successfully carries this burden of production, the presumption of discrimination disappears. Dávila v. Corporación de Puerto Rico, 498 F.3d 9, 16 (1st Cir. 2007) (citing Ramírez Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 78 (1st Cir. 2005)). Consequently, the burden would once again fall on the employee's shoulders. Burdine, 450 U.S. at 254. The employee must then demonstrate: a) that the non-discriminatory reason given by the employer is not to be believed, and/or b) that an age related discriminatory reason is more likely than the employer's non-discriminatory explanation. Burdine, 450 U.S. at 256. This last phase of the burden shifting framework "merges with the *ultimate burden* of persuading the court that" the plaintiff was the victim of intentional age discrimination. (emphasis added). Id.; *see also* Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012).

> A plaintiff who makes the prima facie showing is entitled to a presumption of age-based discrimination. The burden of production then shifts to the employer "to articulate a legitimate, non-discriminatory reason for its decisions." Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008). If the employer articulates such a reason, "the McDonnell Douglas framework-with its presumptions and burdens-is no longer relevant." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993). At this stage, "the sole remaining issue [is] discrimination *vel non*." Id. (quotation marks and citation omitted). A plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). Ultimately, the plaintiff's burden is to prove "that age was the 'but-for' cause of the employer's adverse action." Gross, 129 S.Ct. at 2351.

Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447-48 (1st Cir. 2009).

## IV.    SINGLE EMPLOYER DOCTRINE

The *single employer doctrine* is used to determine if "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.'"[10]   NLRB v. Deena Artware, Inc., 361 U.S. 398, 402 (1960).   The *single employer doctrine* applies, *inter alia,* to cases under Title VII, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA").   Torres-Negron v. Merck & Company, Inc., 488 F.3d 34, 43 (1st Cir. 2007) (citing Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 (6th Cir.1997)).

When applying the *single employer doctrine* to a specific set of facts, the First Circuit has recognized three different tests that have been used to determine whether multiple corporate entities acted as one: a) the integrated-enterprise test, b) the corporate law 'sham' test, and c) the agency test.   Torres-Negron v. Merck & Company, Inc., 488 F.3d 34, 42 n.8 (1st Cir. 2007) (citing Romano v. U–Haul Int'l, 233 F.3d 655, 665 (1st Cir.

---

[10] The *single employer doctrine* should not be confused with the *joint employer doctrine*.   *See* Boire v. Greyhound Corp., 376 U.S. 473 (1964); *and* Radio Union v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 85 (1965).   The *joint employer doctrine* is used when two companies, which are otherwise independent from one another, contract with each other in such a way that they both share or co-determine the conditions of employment for either of their employees.   Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico, 929 F.2d 814, 820 n.17 (1st Cir. 1991) (citing C.R. Adams Trucking, Inc., 262 NLRB No. 67, June 30, 1982, slip op. at 5; Ref-Chem Co. v. NLRB, 418 F.2d 127, 129 (5th Cir. 1969); NLRB v. Greyhound Corp., 368 F.2d 778, 780 (5th Cir. 1966)); *see also* N.L.R.B. v. Browning-Ferris Industries of Pennsylvania, Inc., 691 F.2d 1117, 1122-24 (3d Cir. 1982).   Consequently, when the *joint employer doctrine* is applicable, both companies would be liable for illegal adverse employment actions.   Even if it is determined that the two companies are in fact a joint employer, they both are still what they appear to be: two independent companies.   Browning-Ferris, 691 F.2d at 1122.   On the contrary, the *single employer doctrine* is used to show that two allegedly independent companies are in reality not so independent from one another.   Hence, both companies form a single integrated entity.   Thus, when the *single employer doctrine* is applicable, both companies would be liable for illegal adverse employment actions.

2000)).  Nevertheless, the First Circuit has not yet determined which of these three tests is proper for a *single employer doctrine* analysis.  Id.

Under the *integrated-enterprise test*, there are four factors to consider: 1) common management, 2) interrelation between operations, 3) centralized control over labor relations, and 4) common ownership.  Romano, 233 F.3d at 662.  All four factors are not required in order for the single employer doctrine to apply.  Torres-Negron, 488 F.3d at 42 (citing Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1184 (10th Cir.1999); *and* Pearson v. Component Tech. Corp., 247 F.3d 471, 486 (3d Cir.2001)).  "[T]he test should be applied flexibly, placing special emphasis on the control of employment decisions." Romano, 233 F.3d at 666 (citing Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir.1995)).  "The integrated-enterprise test currently appears to be the standard adopted, or at least applied, by a majority of circuits that have reached the issue." Romano, 233 F.3d at 665 (citing several circuit cases).

On the other hand, the *corporate law 'sham' test* is used to determine whether a parent-subsidiary relationship is actually fake.  Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir. 1980) (citing Hassell v. Harmon Foods, Inc., 336 F.Supp. 432, 433 (W.D.Tenn.1971), aff'd, 454 F.2d 199 (6th Cir. 1972)).  A parent-subsidiary relationship is a sham when the two companies in reality acted as a single employer.  Id.  If the relationship is found to be a sham, the "parent" is also responsible for the illicit actions of the "subsidiary."

Lastly, the *agency test* constitutes a method to evaluate the parent-subsidiary company relationship.  A parent company may be liable for the actions of its subsidiary company.  This occurs when the parent company's control over its subsidiary is such that it

- 13 -

practically makes the subsidiary an agent of the parent company.  Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir. 1980) (citing Linskey v. Heidelberg Eastern, Inc., 470 F.Supp. 1181, 1183-84 (E.D.N.Y.1979); and EEOC v. Upjohn Corp., 445 F.Supp. 635, 638 (N.D.Ga.1977)).  Under the *agency test*, there are three instances where a parent company/corporation and a subsidiary company/corporation should be treated as one entity:

> 1) where the two corporations would be treated as one ('piercing the corporate veil') with regard to creditors' claims under corporate law; (2) where the subsidiary has been created to escape liability under the anti-discrimination laws; or (3) where the parent corporation 'directed the discussion, act, practice, or policy of which the employee of its subsidiary was complaining.'  Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999).

## V.   LEGAL ANALYSIS

In order to survive summary judgment, Plaintiff is only required to demonstrate the existence of a "genuine issue of material fact."  Plaintiff is not required to prove his case at this early stage of litigation; such a burden is left for trial.  "At summary judgment, [the] question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age."  Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9 (1st Cir. 2007) (citing Ramírez Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 78 (1st Cir. 2005); and Zapata–Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002)).  Moreover, Plaintiff benefits from the fact that a summary judgment analysis should be made in the light most favorable to the non-moving party.

Before commencement of the summary judgment calculus, the Court notes that Plaintiff's Exhibit 20, see Docket No. 265-21, and a portion of Defendants' response to Plaintiff's opposition to summary judgment has been stricken from the record.  *See* Court

Order at Docket No. 299.  Accordingly, these stricken portions have not been considered and shall not be considered by the Court in the forthcoming summary judgment analysis.

As stated previously, Plaintiff has no direct evidence of age discrimination; as such, the Court shall apply the *McDonnell Douglas* burden shifting framework.  <u>Cameron</u>, 685 F.3d at 48.  Defendants attack Plaintiff by alleging that: a) Plaintiff cannot establish a *prima facie* case of age discrimination as required under ADEA, and/or b) Plaintiff cannot establish that he would not have been fired *but for* his age.  The Court shall explore each of these points separately.

## A.  *PRIMA FACIE* AGE DISCRIMINATION

As previously stated, under *McDonnell Douglas,* Plaintiff must first establish a *prima facie* case of age discrimination.  When plaintiffs, as in the instant case, allege that they were fired in contravention of ADEA and were subsequently replaced, said *prima facie* case may be established by complying with four requirements.

> To satisfy this [*prima facie*] burden, [Plaintiff] must produce evidence showing that: (1) he was at least 40 years old at the time of the termination; (2) he was qualified for the position that he had held; (3) he was fired; and (4) his employer subsequently demonstrated a continuing need for those services.
>
> <u>Bonefont-Igaravidez</u>, 659 F.3d at 124 (other case citations omitted).

Defendants acknowledge that Plaintiff satisfies the first two *prima facie* requirements. (Docket No. 239, p. 15).   Notwithstanding, according to Defendants, Plaintiff has not satisfied the last two requirements.  <u>Id.</u>

With respect to the third *prima facie* requisite, that Plaintiff was fired, there are two separate summary judgment arguments presented to the Court.  Although separate, these arguments virtually mirror each other.  First, Carvajal, one of the three Defendants, alleges that Plaintiff was never its employee; thus, Carvajal could not have fired or otherwise been

the cause of any adverse employment action towards Plaintiff.  (Docket No. 239, p. 18). Instead, Carvajal claims that its subsidiary companies, namely the other two Defendants, made the determination to fire Plaintiff.  As such, Plaintiff allegedly cannot satisfy the third requisite and falls short of establishing a *prima facie* case against Carvajal.   Second, Distribuidora and Editorial, the two other Defendants, claim that it was Carvajal's decision, and only Carvajal's decision, to fire Plaintiff.  Consequently, Distribuidora and Editorial allege that they are not responsible for Plaintiff's firing or any other adverse employment action.  (Docket No. 239, p. 17).  Thus, in a similar fashion, the other two Defendants also allege that Plaintiff fails in his attempt to satisfy the third requisite.   In response to Defendants' internal finger pointing, Plaintiff avers that all three Defendants fired him while acting in unison as a single entity.  (Docket No. 270, p. 19).  Hence, Plaintiff claims to have satisfied the third *prima facie* requirement against all three Defendants by virtue of the *single entity doctrine*.

As previously stated, there are three *single entity doctrine* tests that have been identified by the First Circuit: a) the integrated-enterprise test, b) the corporate law 'sham' test, and c) the agency test.  Torres-Negron, 488 F.3d at 42 n.8.  Nevertheless, the First Circuit has yet to determine which of said three tests is appropriate to use in the instant case.  *See* Id.  The appropriate test to apply to the present case is irrelevant because, as the upcoming analysis demonstrates, the record abundantly reveals that Defendants, to their detriment, comfortably pass each of these three tests.

A brief look at the record reveals numerous pieces of evidence that point to Defendants being a single entity.  One, despite the fact that Plaintiff was working as country manager for Distribuidora, it was Carvajal that eliminated Plaintiff's country

manager position.   *See* Docket No. 265, p. 52, ¶ 96; Docket No. 278, p. 56, ¶ 96 (admitted); *and* Docket No. 240, p. 3, ¶ 11.   Once more, the Court notes that the country manager position was eliminated over a year before Plaintiff's final termination.   Two, in a performance evaluation form, the company Plaintiff appears to be working for as country manager is Carvajal, not Distribuidora.    *See* Docket No. 240, p. 3, ¶ 11; c.f. Docket No. 248-5.   Three, that Distribuidora complied with the alleged "corporate level" decision to eliminate the country manager position.  (Docket No. 265, p. 52, ¶ 94; Docket No. 278, p. 55, ¶ 94).   Four, Editorial participated administratively in Carvajal's decision to eliminate the country manager position.  (Docket No. 278, p. 55, ¶ 95).   Five, as country manager for Distribuidora, Plaintiff states, under penalty of perjury, that he was responsible for the administration or the management of the following Carvajal businesses in the region: "a) Grupo Editorial Norma, b) BICO (school supplies), c) MEPAL, d) Assenda, and e) Cargraphics."  (Docket No. 265-2, ¶ 8; Docket No. 240, p. 3, ¶ 11 (country manager for Distribuidora)).    Six, between 2005 and 2009, Plaintiff, as country manager for Distribuidora, reported to the International Vice-President of Carvajal and to the other presidents of Carvajal's subsidiary companies that had business in the region.  (Docket No. 265-2, ¶ 17; Docket No. 240, p. 3, ¶ 11 (country manager for Distribuidora)).  Seven, while Plaintiff was country manager for Distribuidora, the following positions "directly" reported to Plaintiff: a) commercial/business manager for the school supplies division of BICO within Distribuidora, b) commercial/business manager for the general interest book division of Editorial, and c) commercial/business manager school books division of Editorial within Distribuidora."  (Docket No. 265-2, ¶ 33; Docket No. 240, p. 3, ¶ 11 (country manager for Distribuidora)).   Eight, the following positions "indirectly" reported to the

country manager of Distribuidora, Plaintiff: a) Head of Human Resources for Distribuidora, and b) Administrative and Financial Manager for Distribuidora.  (Docket No. 265-2, ¶ 34, and 36; Docket No. 240, p. 3, ¶ 11 (country manager for Distribuidora)).   Nine, between 2000 and 2009, Plaintiff, as general manager of B2B, reported to the following positions: a) President of Editorial, while B2B was part of Editorial, and b) President of Publicar, when B2B was transferred from to Publicar.  (Docket No. 265-2, ¶ 18).   Ten, Plaintiff states that it was always Carvajal that dealt with Plaintiff's human resources matters during his employment.  (Docket No. 265-2, ¶ 59).   Eleven, during his tenure as General Manager of Distribuidora and as Manager of Editorial/Grupo Norma, Plaintiff claims that he was responsible for the commercial duties of Editorial.  (Docket No. 265-2, ¶ 69).

Hence, Plaintiff, for the purposes of summary judgment, effortlessly satisfies the third *prima facie* prong.  The record for the instant case is riddled with evidence that points to Defendants being a single entity.  Thus, in the words of Hon. Bruce Selya, First Circuit Appellate Judge, the Court "need not belabor the obvious."  *See e.g.* Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 20 (1st Cir. 2004).   Given the quantity of evidence in Plaintiff's favor, Defendants are unable to evade liability on separate entity grounds at the summary judgment phase.

Moving on to the fourth *prima facie* requisite, Defendants argue that Plaintiff was not in fact "replaced."  As previously stated, in order for the trier of fact to reasonably infer that Plaintiff was *replaced* by a younger employee, the trier of fact would have to conclude that Plaintiff's duties, and no others, were allocated to a younger employee that was hired to perform Plaintiff's duties subsequent to his resignation.  *See* LeBlanc, 6 F.3d at 846 (quoting Barnes, 896 F.2d at 1465, *cert. denied*, 498 U.S. 878 (1990)).   "[A] person is

replaced only when another employee is hired or reassigned to perform the plaintiff's duties." LeBlanc, 6 F.3d at 846 (citing in approval Barnes, 896 F.2d at 846).  As such, Plaintiff would have to establish that a reasonable jury *could* decide that Plaintiff was in fact replaced by Mr. Calero.  Plaintiff cites several exhibits in the record to attempt to persuade the Court to find a genuine issue of material fact on this matter.  For the following reasons, the Court determines that the record in the instant case delivers adequate evidence, when examined in the light most favorable to Plaintiff, that establishes that Mr. Calero did in fact replace Plaintiff as manager of Editorial/Grupo Norma.  One, Mr. Calero, the replacement employee, states in his deposition that he assumed Plaintiff's duties as manager of Grupo Norma when Plaintiff left the company.  (Docket No. 265-12, p. 126). Two, the Carvajal website, at least temporarily, stated that Mr. Calero was appointed as manager for Grupo Norma, the position Plaintiff held prior to his final termination.  (Docket No. 265-11).  However, while this evidence possesses certain probative value, the Court also notes that the website also: a) credits Mr. Calero as being the paper products manager, and b) does not have any date.  Three, an employee from Distribuidora stated that Mr. Calero substituted Plaintiff as manager of Grupo Norma and performed many of Plaintiff's former duties.  (Docket No. 265-4, ¶ 9, and 11).  Four, another employee also states that Mr. Calero substituted Plaintiff and began performing Plaintiff's former duties as manager of Grupo Norma.  (Docket No. 265-5, pp. 27, and 40).  And Five, there is a letter addressed to Mr. Calero by the head of the human resources department that identifies Mr. Calero as the manager of Grupo Norma, the position previously held by Plaintiff. (Docket No. 265-11; *see also* footnote 2 of this Opinion and Order).  All the same, this

letter is dated a year after Plaintiff's firing. Nonetheless, this potential timeline problem is virtually cured when taken into context with the other aforementioned reasons.

The Court reiterates that it must examine the record in the light most favorable to Plaintiff, who is the non-moving party.  *See* Smith, 732 F.3d at 76 (reiterating Shafmaster, 707 F.3d at 135).  Further, all reasonable inferences are drawn in the non-movant's favor. Id.  The Court is moreover precluded from performing credibility determinations and/or weighing any evidence.  Reeves, 530 U.S. at 150.  Having established the benefits that Plaintiff carries as the non-moving party, the Court finds that any grey area on this point favors Plaintiff.  As such, the record warrants a finding that Plaintiff, for the sake of summary judgment, was replaced by Mr. Calero in all of his employment duties. Consequently, the Court rules in Plaintiff's favor in that he complies with the fourth *prima facie* prong.  Having established that Plaintiff satisfies all four *prima facie* requirements, the burden has now shifted to Defendants' side of the court.  Thus, Defendants now carry the burden of articulating a legitimate non-discriminatory reason for Plaintiff's firing.

### B.  ALLEGED NON-DISCRIMINATORY REASON FOR FIRING

Once more, if a plaintiff establishes a *prima facie* case of age discrimination under ADEA, a rebuttable presumption of discrimination is generated.  Consequently, a burden of production falls on a defendant's shoulders to articulate a legitimate, non-discriminatory reason for the firing.  Should this be accomplished, the *intermediate burden* would shift back to the plaintiff.  For the reasons discussed in subsection A, the burden has now shifted to Defendants.  At this point, in order for Defendants to prevail on summary judgment, Defendants must necessarily articulate a legitimate non-discriminatory reason

for the firing to rebut the presumption of discrimination that is now in Plaintiff's favor. Burdine, 450 U.S. at 254.

Defendants argue that the reason for the firing was that the position of **country manager** was eliminated in a "verticalization" process that was aimed at improving company efficiency and saving company costs. *See* Docket No. 239, p. 26 *et seq.* Nonetheless, aside from whether or not this reason is legitimate and non-discriminatory, there is one fatal flaw in Defendants' argument. Plaintiff was in fact the country manager before said position was eliminated; however, as previously alluded to, this was not Plaintiff's only position in Defendants' company. For years Plaintiff simultaneously held two to three employment positions within the company. In fact, Defendants' own evidence states that the position of country manager was eliminated one year prior to Plaintiff's final termination; Plaintiff spent the final year of employment working for Editorial/Grupo Norma in a management capacity. (Docket Nos. 241-44, and 242-16). Plaintiff's lawsuit revolves around the termination of his employment as **manager of the Editorial/Grupo Norma company**, a job which is completely distinct and separate from the other country manager position addressed by Defendants. *See* Amended Complaint, Docket No. 31 (claiming the position was filled by Mr. Calero).[11] Plaintiff is not suing for an illegal age-based firing from any other position within the company, which was previously found to be a single entity.

For the aforementioned reasons, the presumption in Plaintiff's favor has remained unchallenged as Plaintiff is not invoking any discrimination-based firing from his prior country manager position. Further, as stressed before, Defendants' own evidence states that the country manager position was eliminated on April 30, 2009, which is over a year

---

[11] The Court notes that the Amended Complaint references the termination letter which, as previously discussed, mistakenly references the country manager position. *See* footnote 6 of this opinion and order.

before Plaintiff's termination on June 30, 2010.   (Docket Nos. 241-44, and 242-16). Moreover, even if Defendants were to hypothetically remedy the date discrepancy, perhaps by saying that the elimination of the country manager position took over a year to become effective, the record clearly establishes a genuine issue of material fact on this point.

Due to the fact that Defendants have been unable to carry their burden at this summary judgment stage, Plaintiff need not demonstrate anything more to survive summary judgment; Plaintiff's presumption of age discrimination prevails. Notwithstanding, out of an abundance of caution, the Court shall go one step further and evaluate Defendants' position on *but-for* grounds.


## C. *BUT-FOR* ANALYSIS

When a legitimate, non-discriminatory reason for the termination is articulated by a defendant, the *intermediate burden* once again is shifted toward the plaintiff.  (For the sake of argument, the Court is assuming that Defendants have complied with this burden).  This is the last stage of the *McDonnell Douglas* burden shifting framework.

> If the employer articulates such a reason, "the McDonnell Douglas framework-with its presumptions and burdens-is no longer relevant." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993). At this stage, "the sole remaining issue [is] discrimination *vel non.*" Id. (quotation marks and citation omitted). A plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). Ultimately, the plaintiff's burden is to prove "that age was the 'but-for' cause of the employer's adverse action." Gross, 129 S.Ct. at 2351.
>
> Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447-48 (1st Cir. 2009).

The Court emphasizes that Plaintiff's burden is demonstrating that a reasonable jury *could* decide that age was *the motivating factor*, as opposed to *a motivating factor*, in

Plaintiff's firing.  There are various reasons, which supported by evidence, that have been presented by Plaintiff to argue against summary judgment.  The Court shall judiciously describe each piece of evidence presented.  Not all favor Plaintiff; nevertheless, in the end, Plaintiff survives.

First, Plaintiff claims that Mr. Cody Lund, who is allegedly younger, replaced Plaintiff as general manager of B2B in January of 2010.  (Docket No. 265, p. 46, ¶ 57).  However, Plaintiff himself undermines any potential relevance to this claim in the instant case by stating that Mr. Cody Lund's appointment as general manager came as a result of several external pressures that were each independent of any age consideration.  (Docket No. 265, pp. 9-10, ¶ 32).  Thus, this piece of evidence does not help Plaintiff's age discrimination claim.

Second, Plaintiff claims that Defendants told him that his employment could not be retained because Plaintiff was too expensive.  (Docket No. 265, p. 47, ¶ 63).  It should be noted that, prior to his firing, Plaintiff worked for Defendants for twenty years.  Plaintiff contends that his salary was high precisely because of his many years of experience working for Defendants.  Thus, Plaintiff claims that there is a correlation between an employee's age and an employee's years of experience working for Defendants.  Accordingly, Plaintiff claims that Defendants' assertion is proof of age discrimination proscribed by ADEA.  However, under similar circumstances, the Supreme Court has stated otherwise:

> When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. **This is true even if the motivating factor is correlated with age, as pension status typically is.** Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. See 1 J. Mamorsky, Employee Benefits Law § 5.03 (1992). On average, an older employee has had more years in the work force than a

younger employee, and thus may well have accumulated more years of service with a particular employer. Yet **an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."**

The instant case is illustrative. Under the Hazen Paper pension plan, as construed by the Court of Appeals, an employee's pension benefits vest after the employee completes 10 years of service with the company. **Perhaps it is true that older employees of Hazen Paper are more likely to be "close to vesting" than younger employees. Yet a decision by the company to fire an older employee solely because he has nine-plus years of service and therefore is "close to vesting" would not constitute discriminatory treatment on the basis of age.** The prohibited stereotype ("Older employees are likely to be ___") would not have figured in this decision, and the attendant stigma would not ensue. The decision would not be the result of an inaccurate and denigrating generalization about age, but would rather represent an accurate judgment about the employee-that he indeed is "close to vesting."

We do not mean to suggest that an employer lawfully could fire an employee in order to prevent his pension benefits from vesting. Such conduct is actionable under § 510 of ERISA, as the Court of Appeals rightly found in affirming judgment for respondent under that statute. See <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 142-143 (1990). **But it would not, without more, violate the ADEA. That law requires the employer to ignore an employee's age (absent a statutory exemption or defense); it does not specify further characteristics that an employer must also ignore.** Although some language in our prior decisions might be read to mean that an employer violates the ADEA whenever its reason for firing an employee is improper in any respect, see <u>McDonnell Douglas</u>, 411 U.S. at 802 (creating proof framework applicable to ADEA) (employer must have "legitimate, nondiscriminatory reason" for action against employee), this reading is obviously incorrect. For example, it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA. The employee's race is an improper reason, but it is improper under Title VII, not the ADEA.

<u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 611 (1993); *see also* <u>Bernhard v. Nexstar Broadcasting Group, Inc.</u>, 146 Fed.Appx. 582 (3d Cir. 2005); *and* Holt v. Gamewell Corp., 797 F.2d 36, (1st Cir. 1986).

Hence, drawing an analogy, high salary is not necessarily correlated with age. Therefore, Defendants may legally fire Plaintiff because of his high salary without violating any ADEA provision. The Court notes that none of these cases were cited by any of the parties. Any prior Circuit case to the contrary has been constructively reversed. Hence, Plaintiff's argument on this point fails.

Notwithstanding, the aforementioned Supreme Court case does not absolutely preclude an employee from arguing that an employer used high salary as camouflage to circumvent the age discrimination prohibition.  *See* Hazen, 507 U.S. at 613 ("Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent . . . . , but in the sense that the employer may suppose a correlation between the two factors and act accordingly").  This argument requires that the trier of fact make an inference that the verbalized salary reason for the firing was not true.  Thus, while it is incorrect to state that a salary-based firing is "direct evidence of age discrimination," it is possible for high salary to be used as a *proxy* for age discrimination.  Id.; *see* Docket No. 270, p. 38.  Accordingly, combined with the rest of the cited evidence on the record, this *proxy* argument is viable for summary judgment purposes.  Hence, this comment made by Defendants may be used as circumstantial evidence of age discrimination.

Third, two months prior to Plaintiff's termination, Defendants transmitted an open oral communication through the intranet news communication center stating "how the company's employee force is becoming younger and how their benefits scheme needed to be reexamined to make it more attractive for this age group."  (Docket No. 265, p. 51, ¶ 90).  This oral communication constitutes circumstantial evidence to be weighed by the jury.

Fourth, Defendants had "a global company policy geared to force out the company executives who reached 60 years of age."  (Docket No. 270, p. 12).  However, Plaintiff also admits that said policy was not implemented in Puerto Rico or the United States because of this nation's broader scope of legal protection for older employees when compared to the law of other nations.  Id.  Nevertheless, this company policy can be taken as

circumstantial evidence that demonstrates Defendants' tendency to prefer younger employees over older employees.

Fifth, Plaintiff and another employee claim that Mr. Ricardo Obregón, upon being named president for the Defendant companies, proceeded to fire "a whole generation of executives" who were over 40 years of age.  (Docket No. 265, p.51, ¶ 92).  Plaintiff, in his own statement, mentions twenty employees who were over 40 years of age and were fired.  (Docket No. 265-2, ¶ 91).  Yet again, this piece of evidence is circumstantial evidence that goes to show a discriminatory company practice that the jury could accept.

Sixth, Defendants, at one point, had a strategy to recruit future employees with certain qualities, which included the quality of youth.  (Docket No. 265, p.51, ¶ 89).  The prospective employee qualities listed were: "young, bilingual, [have] 3 years of work experience, [have an] MBA or specialization, [have the] potential to take over strategic positions, and [have a] competitive salary."  (Docket No. 273-3, p.3).  It should be noted that youth was the first quality listed out of the other six criteria.  This strategy was presented in the form of a PowerPoint presentation dated April 26, 2005, over five years before Plaintiff's firing.  (Docket No. 273-3, p.1).  This evidence again demonstrates that, at least at some point, Defendants took age into account, among other factors, when hiring employees in accordance with the stated recruiting strategy.  Defendants do not deny that said recruiting strategy was implemented in Puerto Rico; instead, Defendants only argue that this recruiting strategy was only implemented for a short period of time before being eliminated.  (Docket No. 278, p.54, ¶ 89).  Once more, this is another fact that demonstrates through circumstantial evidence of an aged-based preference in Defendants' employment practices.

Seventh, Plaintiff states that Defendants replaced him with Mr. Calero, who is ten years younger than Plaintiff.  (Docket No. 265, pp.43-44, ¶ 36, and 41).  Moreover, Plaintiff claims that Ms. Lina Ayala, who is allegedly younger and less experienced than Plaintiff, was appointed in 2009 to the position of global manager within the company instead of Plaintiff.  (Docket No. 265, p.46, ¶ 54-56).  Again, Plaintiff alleges that these facts are also circumstantial evidence that Defendants discriminated against him because of his age.

These latter six pieces of evidence stated herein each constitute circumstantial evidence of age-based discrimination by Defendants against Plaintiff.  Each in turn is based on circumstantial evidence as to the true motive and intent of Defendants' reason behind the termination of Plaintiff.  Issues of "design, motive, and intent with which men act [are] peculiarly factual issues for the trier of fact."  Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982); Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 ("determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury").  In the impending trial, Defendants may argue to the trier of fact that this evidence is not to be believed or is of low probative value; however, at the summary judgment phase, it is not the Court's place to make credibility determinations or weigh the evidence.  Reeves, 530 U.S. at 135; Anderson, 477 U.S. at 255; see also Pina, 740 F.3d at 802.  The Court must look at the record in the light most favorable to Plaintiff, who is the non-moving party.  Moreover, due to the fact that Plaintiff constitutes the non-moving party, the Court must accept all reasonable inferences in his favor.  Smith, 732 F.3d at 76 (reiterating Shafmaster, 707 F.3d at 135).  The Court determines that the record warrants a finding that there is a genuine issue of material fact regarding whether or not age was the but-for cause of Plaintiff's termination.  Therefore, with respect to this matter,

the Court also rules in Plaintiff's favor pursuant to the applicable summary judgment standard.

## VI.    CONCLUSION

For the reasons stated above, the Court hereby **DENIES** all three Defendants' motions for summary judgment.  The Court finds that Plaintiff has established a genuine issue of material fact regarding whether or not Plaintiff complies with all four *prima facie* requirements.  As such, for the sake of a summary judgment analysis, a presumption of discrimination is established.  Further, the Court finds that no legitimate, non-discriminatory reason for Plaintiff's termination from his management position for Editorial/Grupo Norma was presented.  Consequently, the Court finds that the presumption of age discrimination remains in force.  Additionally, even if the Defendants did articulate a non-discriminatory reason for Plaintiff's termination, the Court finds that there is a genuine issue of material fact as to whether or not age was *the motivating factor* in Plaintiff's termination.  The Court shall hold a Pretrial Conference on **Tuesday, April 22, 2014, at 5:00 p.m.** A trial is to be held at some point during the months of June or July.[12]

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of March, 2014.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge

---

[12] Although the Court will entertain Plaintiff's supplemental state law claim that arises under Puerto Rico Law 80, see 29 P.R. Laws § 185a, the Court believes that this matter will eventually need to be certified to the Supreme Court of Puerto Rico on two points of law relating to the calculation of the compensation provided for in said statute.  The two points of law are as follows: 1) whether or not the federal *single entity doctrine* is appropriate under local Law 80, and  2) assuming that the employee has worked both in and out of Puerto Rico for the same company, whether or not the employee's years of employment outside of Puerto Rico should count towards the time of employment under Law 80.  Both are questions of first impression of which the Court currently enjoys supplemental jurisdiction.  *See* 28 U.S.C. § 1367; Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("Thus, as long as the plaintiff's federal claim is substantial, the mere fact that it ultimately fails on the merits does not, by itself, require that all pendent state-law claims be jettisoned").